UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MICHAEL HARBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 24-178-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| THE APPLICANT SCREENING | ) | **MEMORANDUM OPINION** |
| COMPANY OF AMERICA, INC., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant The Applicant Screening Company of America, Inc. ("APSCREEN") has moved for summary judgment on Plaintiff Michael Harbaugh's clams asserted under the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). [Record No. 28] Having considered the parties' arguments,[1] the undersigned concludes are no genuine dispute factual issues and APSCREEN is entitled to judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure. However, APSCREEN's request for attorney's fees will be denied because it has failed to show that the plaintiff brough this action in bad faith or for purposes of harassment.

## I. Background

Plaintiff Harbaugh applied in 2023 for a facilities maintenance position at Vallco Management Services. [Record Nos. 1 at ¶ 11 and 28 at 4] He consented to the criminal

---

[1] The undersigned notes that the plaintiff's response includes the header "oral argument requested" but makes no further mention of the request in the body of his brief. [Record No. 33 at i] Nonetheless, oral argument is not necessary to resolve this motion.

background check portion of the application process which Vallco then contracted with APSCREEN to provide. [Record Nos. 1 at ¶ 11 and 28 at 5] APSCREEN offers pre-employment background screening services to companies like Vallco. It either conducts the investigation itself or uses third-party vendors such as Baxter Research to do so. [Record No. 28 at 4] When an initial criminal history database search reveals that the applicant's name is implicated in a criminal case, APSCREEN seeks clarification and specifics directly from the respective court either on its own or through its third-party vendors. *Id.* at 3.

The Vallco application also required Harbaugh to fill out a criminal history disclosure, indicating whether he had "been convicted of a felony or misdemeanor anywhere other than a minor traffic violation," and whether he was "out on bail, awaiting trial and/or [had] any outstanding warrants pending against" him. [Record Nos. 28 at 3–4 and 28-5 at 11] Harbaugh answered "no" to both inquiries and certified their accuracy. [Record No. 28-5 at 12]

APSCREEN received Vallco's request to provide Harbaugh's pre-employment screening on September 25, 2023. [*See* Record No. 28-7.] APSCREEN's initial database search identified potential criminal records for Harbaugh in Kentucky and California. [Record No. 28 at 5] It then contracted with Baxter Research to obtain more information regarding Harbaugh's criminal records in Merced County, California. *Id.* The contract provided that Baxter was free to pay any court fees it incurred, however, if it wanted APSCREEN to cover the fee, it was first required to seek APSCREEN's written approval. [Record No. 33 at 9]

During the COVID-19 pandemic, many courts (including the Merced Superior Court) closed their public research terminals. *Id.* As a result, researchers had to obtain desired information directly from the court clerks. *Id.* Despite this modification regarding how information was previously garnered, APSCREEN did not alter its research process. *Id.*

- 2 -

The Baxter researcher went to Merced Superior Court to inquire about Harbaugh's criminal records. The clerk relayed that he was charged in Count 1 for a misdemeanor of resisting or obstructing a public officer, Count 2 for a felony theft and unlawful taking or driving of a vehicle, and Count 3 for a felony for the purchase or receipt of a vehicle obtained by theft or extortion. [Record No. 33 at 10] While the exact cause of the error is unknown, the clerk verbally reported that Counts 1 and 3 were dismissed when, in fact, Counts 2 and 3 were dismissed, meaning that Harbaugh had a misdemeanor conviction for resisting or obstructing a public officer; however, he did not have a felony theft conviction. *See id.*

The Baxter researcher did not personally review Harbaugh's criminal records or seek additional verbal confirmation from the clerk concerning which count(s) were dismissed. *Id.* Further, the researcher did not request printed records from the clerk at Baxter's cost, nor did Baxter seek written permission from APSCREEN to cover such costs. *See id.* at 12. Ultimately, Baxter reported to APSCREEN inaccurate information it received from the clerk (i.e., that Harbaugh had been convicted of felony theft or unlawful driving of a vehicle). *See id.* at 10.

APSCREEN compiled Baxter's finding of the felony from Merced County, California, with its other research revealing at least three other misdemeanor convictions and submitted its report to Vallco. [*See* Record Nos. 28 at 13 and 33-6.] By this point in the application process, Harbaugh had already advanced to an on-site interview and tour of Vallco's facility. [*See* Record No. 28 at 13.] After the tour but before receiving APSCREEN's report, Vallco's hiring manager Mike Rhode had been provided a mugshot of Harbaugh. *Id.* at 13–14. Rhode contacted Harbaugh who explained that he had a "couple misdemeanors before [he] joined the Marine Corps and turned [his] life around." [Record No. 33-5 at 49] Rhode advised Harbaugh

that he should clarify those issues with Lisa Estes (Harbaugh's main hiring contact), as he did not disclose those misdemeanors on his application. *Id.* at 48–49. On October 4, 2023, Harbaugh emailed Estes requesting a phone call and offering to provide additional information regarding the misdemeanors. [Record No. 28-10 at 3]

The following day, APSCREEN provided Vallco with Harbaugh's criminal history report. Estes emailed Harbaugh, noting "[w]e received the final reports on your background check. Unfortunately, due to the contents in your background reports, we are not able to continue with the hiring process. If you disagree with any of the contents of the attached background report, please contact the court involved to correct the issue." *Id.* at 2. Harbaugh responded that he had never been convicted of a felony and that he was working to get the report corrected. *Id.*

Immediately after Harbaugh alerted APSCREEN of the discrepancy, APSCREEN notified Vallco it was reinvestigating the matter. [Record No. 28 at 6–7] As part of that subsequent investigation, the Merced Superior Court corrected its original representation ten days later, noting that the clerk had made an error and that Harbaugh did not have a felony conviction. *Id.* at 7. APSCREEN then provided Vallco a corrected report which reflected that Harbaugh was felony-free. *Id.* But when Harbaugh reached back out to Vallco, he was told the position had been filled. [Record No. 33 at 11]

Harbaugh filed this lawsuit alleging APSCREEN violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, by failing to use "reasonable procedures to assure the maximum accuracy possible" in creating his report that was disseminated to Vallco. [Record No. 1 at ¶ 61] He claims that he was injured in failing to be hired for the position, time expended, and

emotional distress from being labeled a "felon." [Record No. 1 at ¶ 19] He seeks statutory damages, actual damages, and punitive damages. [Record No. 1 at ¶ i]

## II. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Toms v. Taft*, 338 F.3d 519, 523 (6th Cir. 2003). A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 247 (1986). To be sure, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. In resolving a motion for summary judgment, the court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## III. Analysis

APSCREEN argues that despite the inaccurate record, it used reasonable procedures and that the FCRA does not demand strict liability. [Record No. 28 at 9–12] And in any event, Harbaugh does not show that APSCREEN's error caused him to not get the position because he was not truthful on his application concerning his misdemeanor convictions, nor does he show he is entitled to damages. *Id.* at 12–17. It further seeks that the plaintiff be ordered to pay attorney's fees, arguing this matter was brought in bad faith or for purposes of harassment. *Id.* at 17–20.

Conversely, Harbaugh contends that APSCREEN had alternative reasonable procedures available that would have assured the maximum possible accuracy but declined to

implement those procedures.  [*See* Record No. 33 at 6–7, 16–17.]  He insists that the timeline of events and statements made create a fact question regarding whether the erroneous felony conviction was the cause of Vallco not offering him employment, rather than his failure to disclose his misdemeanors.  *See id* at 20–21.  Concerning damages, Harbaugh argues that he was denied employment due to APSCREEN's error, has suffered emotional distress due to being labeled a "felon," and has wasted his time trying to correct the false reporting.  *Id.* at 22. He asserts that all of these matters constitute "triable issues of fact" to be decided by a jury. *Id.*  And Harbaugh further claims that his emotional distress was so severe that he "turned to alcohol as a crutch which landed him in a 6-month rehab stint."  *Id.* at 23.

Harbaugh claims that APSCREEN violated 15 U.S.C. § 1681e(b) because it "failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to [him] in its consumer reports."  [Record No. 1 at ¶ 62]  However, "liability does not flow automatically from the fact that a consumer reporting agency, such as defendant, reports inaccurate information."  *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982).  Instead, Harbaugh must demonstrate that (1) APSCREEN "reported inaccurate information"; (2) APSCREEN "negligently or willfully failed to follow reasonable procedures to ensure maximum possible accuracy of his information"; (3) "he was injured"; and (4) APSCREEN's report "was the proximate cause of his injury."  *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 536 (6th Cir. 2024) (citing 15 U.S.C. § 1681e(b)).  The parties agree that APSCREEN reported inaccurate information, but they disagree that the remaining elements are met.

**Reasonable Procedures to Ensure Maximum Possible Accuracy**

"Some circuits have observed that whether a procedure is reasonable is often a 'fact-dependent inquiry' reserved for a jury."  *Hammoud v. Equifax Info. Servs., LLC*, 52 F.4th 669,

675 (6th Cir. 2022) (quoting *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015)).    Other circuits, however, "have concluded that a credit reporting agency's procedures are reasonable as a matter of law when they rely on information obtained from reputable sources." *Id.* (citing *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004)).    As an issue of first impression, the United States Court of Appeals for the Sixth Circuit took the latter approach in *Hammoud, supra,* and determined the challenged procedure to be reasonable as a matter of law.

In that case, there was an error in the court docket that caused bankruptcy proceedings to be wrongly attributed to the plaintiff.    The panel determined that identifying the error would have required someone with at least some legal training to uncover it.    *Id.* at 676.    And because the entity producing the data was known to be reliable, the reporting agency's procedure was reasonable as a matter of law.    *Id.* at 675 (citing *Wright*, 805 F.3d at 1240) (noting a consumer reporting agency's reliance on data collected by outside entities is reasonable unless the source is known to be inaccurate, unreliable, or the data is inconsistent with the information already obtained by the agency).    It further provided that Section 1681e(b) did not require "reporting agencies to investigate information to that degree, unless and until the consumer has alerted it to an inaccuracy." *Id.* at 676 (citations omitted).    However, once alerted, more intensive research may be necessary to satisfy "reasonable procedures" at that juncture.    *Id.*

The panel justified that result because "consumers are 'in a better position . . . to detect errors' in their credit reports and inquire about a fix." *Id.* (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994)).    And once the reporting agency was notified of the error, it promptly fulfilled its obligation to investigate and correct it.    *Id.*    Thus, the panel concluded that the district court properly held that the procedures were reasonable as a matter

of law.  *Id.*  It further noted that the procedures struck "the right balance between ensuring accuracy and avoiding 'an enormous burden' on consumer credit reporting agencies.  *Id.*

As relevant here, APSCREEN has been providing pre-employment screening services for 45 years.  [Record No. 28 at 3]  Before this lawsuit, it "had never received any complaints about the accuracy of any information included in its reports.  *Id.*  Its procedures in generating a report are as follows: (1) it conducts a preliminary criminal history search on the applicant; (2) if that search returns criminal records, it dispatches someone to the relevant court to conduct onsite research; (3) if the court is located too far from APSCREEN's office, it contracts with vetted third-party vendors to conduct the research.  *Id.*  Research methods vary from court to court, depending on processes required by each court.  *Id.* at 4.  And as noted previously, some courts have public terminals where researchers can review court documents themselves, but others require that the information comes directly from the clerk.  *Id.*

APSCREEN's initial search of Harbaugh returned potential criminal cases.  *Id.* at 4.  At issue here were criminal records in Merced Superior Court.  Because the court was out of its area, APSCREEN relied on Baxter as it had done for more than 18 years without any reliability or accuracy issues with its research before this incident.  *Id.*  The Baxter researcher went directly to the Merced Superior Court (where no public terminal was available) and received the erroneous information verbally from a clerk.  Baxter reported back to APSCREEN that Harbaugh had been convicted of felony theft, which APSCREEN incorporated into its own findings regarding his other misdemeanor convictions.

There is no indication that the information Baxter uncovered contradicted the initial database search APSCREEN conducted on Harbaugh's criminal history.  Nor is there any evidence that APSCREEN was on notice that it should not rely on Baxter's research.  There is

also no dispute that APSCREEN's report accurately relayed the information provided by the clerk. And once APSCREEN was notified of the potential error, it acted with haste and promptly notified Vallco that it was reinvestigating its report before researching and correcting the error within ten days. *See id.* at 6–7.

Harbaugh's argument that additional procedures *could have been* in place that would have prevented the error is unavailing. [*See* Record No. 33 at 16–17 (arguing that APSCREEN could require researchers to verbally confirm with the clerk the information provided or pay fees to print court records).] The plaintiff in *Hammoud v. Equifax Information Services, LLC* made a similar argument which the Sixth Circuit rejected. *See* 52 F.4th at 675–76. There, Hammoud asserted that the court filing that would have cleared up the error was publicly available and should have put the reporting agency on notice to inquire further. *Id.* at 676. But as the panel explained, "Section 1681e(b) does not require credit reporting agencies to investigate information to that degree" and that those agencies must strike a balance between ensuring accuracy and not taking on "an enormous burden." *Id.*

While it is true that APSCREEN *could have* required that all criminal records be purchased in print form at its expense or that third-party researchers be required to verbally confirm each conviction with the clerk, that does not mean its existing procedures were unreasonable. [*See* Record No. 33 at 16–17.] Much like the human error in *Hammoud v. Equifax Information Services, LLC*, the Merced Superior Court clerk's mistake in identifying the wrong charge for which Harbaugh was convicted was just that: a mistake. A "reasonable procedure to assure the maximum accuracy possible" is a high bar but does not require that every potential calamity be accounted for and mitigated. Such a standard would result in "an enormous burden" on reporting agencies.

The FCRA does not impose strict liability for reporting inaccurate information.  *Nelski v. Trans Union, LLC*, 86 Fed. App'x 840, 844 (6th Cir. 2004) (citing *Spence v. TRW. Inc.*, 92 F.3d 380, 382–83 (6th Cir. 1996)).  Instead, the standard for a reasonable procedure to assure the maximum accuracy possible considers "what a reasonably prudent person would do under the circumstances."  *Bryant*, 689 F.2d at 78 (citation omitted).  Here, once alerted to potential criminal cases, APSCREEN sought additional information directly from the court.  And while APSCREEN will only pay additional fees associated with research if third-party vendors receive written permission, that cannot be said to be unreasonable.  Neither is it unreasonable to rely on the information provided by the clerk.  Even construing the FCRA liberally in Harbaugh's favor, APSCREEN implemented a reasonable procedure (*i.e.*, what a reasonably prudent person would do under the circumstances) to ensure the maximum accuracy of his report as a matter of law.  [Record No. 33 at 14 (citing cases that note liberal construction on behalf of consumers)]

Because the Court determines that APSCREEN's procedures were reasonable as a matter of law, it declines to analyze the other elements in 15 U.S.C. § 1681e(b).  The same is true for Harbaugh's claim for damages.  Damages may be recovered under the FCRA against any person who negligently or willfully "fails to comply with any requirement imposed under this subchapter with respect to any consumer."  15 U.S.C.§ 1681n(a); 15 U.S.C. § 1681o.  And Harbaugh fails to show a violation, let alone a negligent or willful one.

### Attorney's Fees

Attorney's fees will not be imposed against the plaintiff pursuant to 15 U.S.C.A. § 1681n(c) because there is no proof that he brought his claim in bad faith or for purposes of harassment.  APSCREEN acknowledges that it made an error in reporting Harbaugh's criminal

history to his potential employer.  Prior to discovery, he could not have known what procedures APSCREEN used in generating that error.  The allegations in the Complaint and the plaintiff's actions throughout the pendency of this lawsuit do not amount to bad faith and do not demonstrate the action was brought for the purposes of harassment.

### IV.  Conclusion

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** that Defendant The Applicant Screening Company of America, Inc.'s motion for summary judgment [Record No. 28] is **GRANTED**.

Dated: November 14, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky